### THOMPSON v. NORTH.

No. 30665. Oct. 13, 1942.

*129 P. 2d 1011.*

B. F. Davis, J. A. Patterson, and Earl A. Davis, all of Wewoka, for plaintiff in error.

Geo. C. Crump and H. W. Carver, both of Wewoka, for defendant in error.

HURST, J. The plaintiff, North, sought a mandatory injunction requiring the defendant, Thompson, to endorse and deliver to him a check in the possession of Thompson which North claimed he was entitled to. The trial

court restrained the defendant, pending a trial on the merits, from cashing or disposing of the check, and at the conclusion of the trial granted plaintiff the relief prayed for, and Thompson appeals.

North was the owner of certain paving bonds. Thompson owned lots 21 and 22, of block "A," South Heights addition to Wewoka. Thompson purchased some paving bonds from North for the purpose of paying paving taxes therewith against his lots pursuant to chapter 58, S. L. 1933, giving North a note secured by a mortgage on the property in payment therefor. After said statute was declared unconstitutional (Davis v. McCasland, 182 Okla. 49, 75 P. 2d 1118) suit was instituted to cancel the receipts issued for payments made with bonds, and to foreclose the paving tax liens on properties affected thereby, including that of Thompson, which resulted in the cancellation of the tax receipts. The city of Wewoka then issued to those persons who had paid assessments by the delivery of bonds certificates of participation in the money collected and to be collected for the payment of the bond issue. Payments were made on these certificates of participation at intervals when the money to pay off the bond issue was collected by the city treasurer. The check in controversy was one so issued to Thompson.

North alleged, and the evidence tended to prove, that Thompson could not pay the delinquent taxes and special assessments against his property, and that the parties agreed that North should bid in the property for Thompson at foreclosure sale, and that Thompson would endorse and deliver to North the checks received by Thompson on the certificates of participation to pay the note held by North and the money advanced by him to purchase the property at foreclosure sale. One such check was turned over to North and credited as a payment on the note. When North, who apparently was watching for the payments, discovered that the city treasurer was able to make another payment, he called Thompson, who brought

the certificate of participation to his office and turned it over to him. The certificate was payable to Thompson or bearer. Thereupon North and Thompson went to the office of the city treasurer and North delivered the certificate to the treasurer, who advised them that he could not make the check at that time, but could do so later in the day. Later in the day the treasurer delivered the check to Thompson.

Both North and Thompson testified that Thompson delivered the certificate to North. Both of them and the treasurer testified that it was in North's possession when they went to the treasurer's office, and that North delivered it to the treasurer. The treasurer agreed to call North when the check was ready, and did so, but North was unable to call for the check and told the treasurer to give it to Thompson. North testified that he and Thompson agreed that the check would be made to Thompson, and that Thompson would endorse and deliver it to North, who would credit it as a payment on the note. This was the procedure followed in the handling of the other check, and while Thompson denies any such agreement, it is clear that the treasurer understood that the check was to be delivered to North, and that Thompson and North had agreed that the proceeds were to be applied on the note. Thompson testified that when he and North left the treasurer's office he asked North if the check would not be more than enough to pay the note, and if he (Thompson) would not have something left out of it, and that North refused to tell him. North testified that Thompson talked to him about the application of the proceeds and he told him to come back when he (North) had received the check and they would figure it out. Thompson, after receiving the check, claimed it as his own and refused to endorse it to North, or to apply it on the note.

Thompson contends (1) that this is really an action to collect the debt evidenced by the note without bringing suit thereon, and that the remedy by mandatory injunction is not proper, and

(2) that North has an adequate remedy at law by an action on the note, and by garnishment or attachment.

1. We think it is clear that the action is not brought on the note, although it may result in the payment thereof. The indebtedness evidenced thereby is not disputed. The question is whether Thompson may be compelled to endorse and turn over to North a check which really belongs to North, although payable to Thompson. Of course, if the proceeds of the check amount to more than the balance due from Thompson to North, the remainder would belong to Thompson. But when the certificate, payable to Thompson or bearer, was by Thompson delivered to North with the understanding that North was to receive the check and apply it on the debt, and North gave the certificate to the treasurer and instructed the latter to give the check to Thompson, in receiving the check Thompson became merely the agent of North, and held the check in trust for him. Carson v. Harrod, 91 Okla. 62, 215 P. 929; 2 C. J. 732, § 397; 3 C. J. S. 6; 21 R. C. L. 832. It was to enforce obedience to his duty that this action was brought. Thompson does not contend that he does not owe the debt to North, or that North will not honestly and properly apply the proceeds of the check, or that North will not convey the property purchased at the foreclosure sale to Thompson when the debt is paid. He simply denies the agreement to let North apply the check on the note, and claims the check as his property. Since he has no property but the homestead, and North's mortgage was canceled by the foreclosure sale, North will be irreparably injured if he cannot collect his debt out of the certificate of participation, since he holds the title in trust for Thompson.

The granting of mandatory injunction is governed by the same rules as the granting of preventive injunctions. The applicant must show a clear right, and a case of necessity or great hardship. Joyce on Injunctions, § 97 a; 32 C. J. 22; 14 R. C. L. 315; 28 Am. Jur. 213.

They are recognized as a proper exercise of equitable jurisdiction in this state. Sproat v. Durland, 2 Okla. 24, 35 P. 682; Dusbabek v. Local Bldg. & Loan Ass'n, 178 Okla. 592, 63 P. 2d 756. They have been granted in many cases involving varying facts. Joyce, above, § 103; 28 Am. Jur. 214. We have been unable to find a case involving the delivery of a check, but see no reason why the remedy should not be granted when a check is wrongfully withheld from the rightful owner, and. grounds for the interposition of equity are shown. In Higgins v. Lewis, 23 Tenn. A. 648, 137 S. W. 2d 308, the court by mandatory injunction required the defendant to pay into court money held by him belonging to plaintiff, his employer. The situation of the parties in that case was in some respects very similar to that of the parties in the instant case. In the Dusbabek Case, above, the defendant was required to return personal property wrongfully taken from the mortgaged real estate. In Berlin v. Baltimore County Bank, 167 Md. 435, 175 A. 196, the vice president of a corporation was required by mandatory injunction to sign checks on insurance funds payable to mortgagees and mortgagors jointly. In short, the rule is that in any case where it is established that a clear legal right of plaintiff has been violated by the defendant, and plaintiff will be irreparably injured unless the status quo is restored, and has no adequate remedy at law, a mandatory injunction may be granted.

2. Thompson contends that North had an adequate remedy at law by attachment or garnishment. The remedy of garnishment would be inadequate, since the check had been delivered to Thompson. Kerr Furniture Co. v. American Ry. Express Co., 145 Okla. 278, 292 P. 560. Obviously, attachment would be inadequate, and there is no showing of the existence of any ground therefor. It is not shown that Thompson has any other property except his homestead, and an amendment to the petition so alleging was not denied.

We conclude that the trial court did

not commit reversible error in granting the mandatory injunction.

Affirmed.

WELCH, C. J., and GIBSON, DAVISON, and ARNOLD, JJ., concur. CORN, V. C. J., and RILEY, OSBORN, and BAYLESS, JJ., absent.